UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE A ROSS,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 19-cv-02353-SVK<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 14, 17 |

Lee Ann Ross ("Plaintiff") appeals from the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. For the reasons discussed below, the Court remands this case for further proceedings.

## I.     BACKGROUND

Plaintiff seeks disability benefits for the period October 24, 2014 through December 31, 2019. Dkt. 13 (Administrative Record ("AR")) 23. On July 23, 2015, Plaintiff filed an application for disability benefits. AR 154-57. An Administrative Law Judge ("ALJ") held a hearing and issued an unfavorable decision on May 24, 2018. AR 21-32. The ALJ found that Plaintiff had the following severe impairments: bipolar disorder, anxiety, and depression. AR 23. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR 24-25. The ALJ then determined that Plaintiff's residual functional capacity ("RFC") allowed her to perform the full range of work at all exertional levels but limited her to simple, repetitive tasks and only frequently interacting with the public and coworkers. AR 25. The ALJ concluded that Plaintiff was not disabled because she was capable of performing jobs that exist in the national economy, including those of a custodian, dishwasher, and hand packer. AR 32.

After the Appeals Council denied review, Plaintiff sought review in this Court. Dkt. 1. In accordance with Civil Local Rule 16-5, the Parties filed cross-motions for summary judgment. Dkts. 14, 17. All Parties have consented to the jurisdiction of a magistrate judge. Dkts. 3, 11.

## II. STANDARD OF REVIEW

This Court has the authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Brown-Hunter,* 806 F.3d at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id.*

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The Court is "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks

and citation omitted).

## III. ISSUES FOR REVIEW

Plaintiff identifies five issues with the ALJ's opinion:

1. Did the ALJ properly evaluate the medical evidence?
2. Did the ALJ err in determining that Plaintiff's bipolar disorder did not meet or equal Listing 12.04?
3. Did the ALJ properly evaluate Plaintiff's testimony?
4. Did the ALJ properly evaluate lay witness testimony?
5. Did the ALJ abuse his discretion by not allowing Dr. Wermuth, Plaintiff's treating physician, to testify by telephone at the hearing?

*See generally* Dkt. 14.

## IV. DISCUSSION

### A. Issue One: Evaluation of Medical Evidence

Plaintiff contends that the ALJ erred by giving: (1) "little weight" to the opinion of her treating psychiatrist, Dr. Wermuth; (2) both "partial weight" and no weight to the opinion of an examining physician, Dr. Marinos; and (3) "significant weight" to the opinions of the non-examining state agency physicians, Dr. Goosby and Dr. Ikawa. Dkt. 14 at 12.

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, the opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician. *Ghanim v. Colvin,* 763 F.3d 1154, 1160 (9th Cir. 2014). Where a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2). The ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting the uncontradicted opinion of treating physicians. *Ghanim*, 763 F.3d at 1160; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (holding that ALJ can reject uncontradicted treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

3

making findings") (internal quotation marks and citation omitted). Where contradicted, the opinion of treating physicians may be rejected only for "specific and legitimate reasons that are supported by substantial evidence." *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Wermuth

The ALJ summarized Dr. Wermuth's opinion as follows: "Dr. Wermuth opined (November 2017) that the claimant would be unable to meet competitive standards in a regular work setting in a number of areas amounting to an inability to sustain even sedentary exertional work on a regular and continuing basis over the course of an 8-hour workday." AR 29 (citing Exhibit 13F). The ALJ identified four reasons for giving Dr. Wermuth's opinion "little weight:" (1) the opinion was inconsistent with Plaintiff's medical record; (2) the limitations were inconsistent with the objective findings made during examination; (3) the limitations were inconsistent with Plaintiff's daily activities; and (4) Dr. Wermuth overstated his frequency of contact and length of treatment. AR 29-30. Because Dr. Wermuth's opinion is contradicted by the opinions of the non-examining state agency physicians, the ALJ was required to set forth specific and legitimate reasons to properly reject Dr. Wermuth's opinion. *Ghanim*, 763 F.3d at 1160.

#### a. ALJ Reason 1: Inconsistent with Medical Record

The first reason the ALJ cites for giving Dr. Wermuth's opinion "little weight" is that Dr. Wermuth's opinion was inconsistent with the medical record. AR 29. The ALJ states that "despite undergoing regular mental health care, mental status examinations have consistently shown, overall, normal mood and affect, alertness, orientation, and intact judgment." *Id*.

The ALJ's statement that Plaintiff's mental status examinations consistently show normal mood is contrary to the evidence. The October 2015 mental status exam cited by the ALJ is one of approximately 70 mental status examinations contained in the record. *See, e.g.*, AR 300, 302, 304, 306, 308, 310, 312, 314, 316, 318, 320, 322, 324, 326, 328, 330, 332, 334, 336, 338, 340, 342, 390, 392, 395, 397, 400. Of these approximately 70 examinations, Plaintiff's mood was reported to be "depressed" and/or "anxious" more than half of the time. *See, e.g.*, AR 437, 439, 441, 444, 446, 448, 453, 456, 459, 461, 463, 465, 467. Significantly, the Commissioner concedes

4

1  that the ALJ misstated Plaintiff's moods as consistently normal when Plaintiff mostly reported an
2  anxious and/or depressed mood. Dkt. 17 at 9.

   The Commissioner argues that misstating Plaintiff's mood is harmless error (Dkt. 17 at 9-
10); the Court disagrees. The only severe impairments the ALJ identified were mental
impairments (AR 23), and the ALJ's mistaken conclusion that Plaintiff's mental examinations
showed normal moods served as a basis for the ALJ's determination that Dr. Wermuth's opinion
was entitled to little weight. As a result, this reason is not legitimate and cannot be used to give
Dr. Wermuth's opinion little weight.

### b. ALJ Reason 2: Inconsistent with Objective Findings

The second reason given by the ALJ for rejecting Dr. Wermuth's opinion is that Dr. Wermuth's limitations were inconsistent with the objective findings made by Dr. Marinos. AR 29. The ALJ "assign[ed] weight to Dr. Marinos' clinical findings that tend to show that the [Plaintiff's] condition is no more than moderately impaired" and noted that Dr. Marinos found Plaintiff to have "a normal mood and affect and [s]he assessed the [Plaintiff] with a Global Assessment of Functioning score of 51-60," which is "generally consistent" with the medical record." AR 28-29.

However, a review of the record indicates that Dr. Marinos actually found that Plaintiff's mood was "anxious" rather than "normal" as the ALJ suggested. AR 262, 264. As a result, it appears that the ALJ's purported inconsistency between Dr. Wermuth's opinion and Dr. Marinos' finding does not exist, as Dr. Marinos, like Dr. Wermuth, found Plaintiff to be of an anxious mood. Accordingly, the ALJ's statement that Dr. Wermuth's opinion was inconsistent with Dr. Marinos' findings is not a legitimate reason to give Dr. Wermuth's opinion little weight.

### c. ALJ Reason 3: Daily Activities

The ALJ also rejects Dr. Wermuth's opinion on the ground that Plaintiff's limitations were inconsistent with her daily activities. AR 29. The ALJ notes that Plaintiff's activities of daily living, which included having a current driver's license and registration, driving to pay her bills with cash, driving to doctors' appointments, having coffee with her friend four days a week, and using her iPad, "cumulatively . . . demonstrate an ability to function, mentally and socially that is

no more than moderately impaired." *Id.*

The Ninth Circuit has stated that an ALJ may reject an opinion where the physician identifies restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue,* 429 Fed. App'x 649, 652 (9th Cir. 2011) (where limitations identified by the doctor conflicted with the claimant's daily activities, the inconsistency was a specific and legitimate reason for rejecting the physician's opinion). Here, however, the ALJ did not explain how Dr. Wermuth's restrictions conflicted with Plaintiff's activities. This reason, too, is neither a specific nor legitimate reason to give Dr. Wermuth's opinion little weight.

### d. ALJ Reason 4: Overstating Length and Frequency of Contact

The final reason the ALJ offers to discredit Dr. Wermuth is that Dr. Wermuth "reported that he ha[d] seen the [Plaintiff] anywhere from once a week to once a month since March 2005" but "there are no treatment notes of record prior to the year 2014." AR 229. This is not a legitimate reason to discount Dr. Wermuth's opinion, as records predating the alleged onset date of October 2014 were specifically not requested by the Commission. *See* AR 298 ("NEED COPIES OF MEDICAL RECORDS 10-1-2014 TO NOW"). Additionally, the ALJ himself determined that the relevant period of disability was from October 24, 2014 through December 31, 2019 (AR 23), so the ALJ's belief that Dr. Wermuth's opinion may be discounted because there were no treatment records prior to the relevant disability period cannot be used to discount Dr. Wermuth's opinion.

The ALJ also notes that "the record strongly indicates that the [Plaintiff], at times, skipped entire months of treatment, such as in March, April and July of 2016." AR 29-30 (citing Exhibit 12F, p. 4-6). Plaintiff concedes that she may not have seen Dr. Wermuth during March and April 2016 but notes that she was seen three times in February 2016 and once in May 2016. Dkt. 14 at 17-18 (citing AR 446). Plaintiff also concedes that she was not seen for five weeks following her June 2016 appointment. Dkt. 14 at 18 (citing AR 433, 435). Plaintiff argues that despite these admissions, the record as a whole demonstrates that Dr. Wermuth saw Plaintiff as frequently as once a week and that over the three-year period, there were only "a handful" of months that she

did not see him. Dkt. 14 at 18 (citing AR 300-85, 389-467). As "intermittent mental health treatment is not a legitimate basis for rejecting" a treating physician's opinion (*Brown*, 2019 WL 2247734, at * 4), the Court does not find that this was a specific and legitimate reason to discount Dr. Wermuth's testimony.

As the ALJ did not identify any specific and legitimate reasons to discount the opinion of Dr. Wermuth, the matter must be remanded.

### 2. Dr. Marinos

Dr. Marinos performed a consultative examination of Plaintiff in October 2015. AR 261-64. As discussed above, Dr. Marinos opined that Plaintiff's mood was "anxious." AR 262, 264. Dr. Marinos also found that Plaintiff "appear[ed] able to understand, remember, and carry out simple instructions," "interact appropriately with others," and "handle simple monetary transactions." AR 264. Dr. Marinos found that Plaintiff "would likely have some difficulty learning complex tasks" and "would likely find it difficult to cope with the usual stresses inherent in a job setting." *Id*. Dr. Marinos further found that Plaintiff's immediate and delayed recall for short stories was mildly impaired and her visual memory ranged from mildly impaired to severely impaired. *Id*.

The ALJ afforded "partial weight" to Dr. Marinos' opinion because "only part of this opinion is consistent" with Plaintiff's medical record and "the asserted limitations in the opinion are inconsistent with the clinical findings made in the examination." AR 28. The ALJ "assign[ed] weight to Dr. Marinos' clinical findings that tend to show that the [Plaintiff's] condition is no more than moderately impaired." AR 29. The ALJ noted that Dr. Marinos found Plaintiff to have "a normal mood and affect and [s]he assessed the [Plaintiff] with a Global Assessment of Functioning score of 51-60," all of which "are generally consistent" with the medical record and generally show "no more than a moderate limitation in any functional area." AR 28. However, as with Dr. Wermuth's opinion (*see* Section IV.A.1), the ALJ incorrectly stated that Dr. Marinos found Plaintiff to have a normal mood when Dr. Marinos stated that Plaintiff was "anxious." AR 262, 264. For the same reasoning as set forth above, this error warrants remand.

////

7

### 3. Dr. Goosby and Dr. Ikawa

The ALJ assigned the opinions of Dr. Goosby and Dr. Ikawa, both of whom are non-examining state agency physicians, "significant weight" because they were "generally consistent with the record as the whole." AR 30. The ALJ states that he agrees that Plaintiff is "likely capable of following some detailed instructions and performing some detailed tasks" and that the assessment of the state agency physicians "is generally consistent with the determined residual functional capacity." *Id*. However, the ALJ also states that he gave Plaintiff the "benefit of the doubt, of which the State agency psychological and medical consultants do not." *Id*. Plaintiff argues that the ALJ erred by giving these physicians' opinions "significant weight" because: (1) they were not consistent with the treating source records or opinions; and (2) the record did not provide sufficient explanation for how they reached their conclusions. Dkt. 14 at 20.

The Ninth Circuit has stated that "[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957 (9th Cir. 2002). While "the opinions of non[-]examining doctors cannot by [themselves] constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," they can be considered in combination with other evidence. *Revels v. Berryhill*, 874 F.3d 648, 664 (9th Cir. 2017) (quoting *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)) (alteration in original).

In light of the errors identified with the ALJ's analysis of Dr. Wermuth's and Dr. Marinos' opinions, the ALJ must also re-evaluate the weight given to the non-examining state agency physicians.

### B. Issue Two: The ALJ's Rejection of Listing 12.04

Plaintiff argues that the ALJ erred by concluding that her bipolar disorder did not meet the requirements of Listing 12.04. Dkt. 14 at 9. Specifically, Plaintiff contends that the ALJ erred by failing to discuss the medical evidence as it related to the Paragraph C criteria and that the ALJ's Paragraph B analysis did not provide the facts or analysis necessary to satisfy Paragraph C. *Id*. at 9-10.

The ALJ addressed the Paragraph B and Paragraph C criteria in his decision.[1] AR 24-25. The ALJ specifically evaluated each of the four requirements under Paragraph B and ultimately concluded that the Paragraph B criteria had not been met. *Id*. In a short paragraph following the Paragraph B analysis, the ALJ stated:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The medical evidence of record does not establish the existence of a disorder of at least two years' duration along with evidence of both medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of claimant's mental disorder; and (2) marginal adjustment, that is, the claimant has minimal capacity to adapt to changes in his or her environment or to demands that are not already part of his or her daily life.

AR 25.

The Ninth Circuit has recognized that "[c]onditions contained in the Listing of Impairments are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995) (internal quotation marks omitted); 20 C.F.R. § 404.1520(d). Accordingly, "[c]laimants are conclusively disabled if their condition either meets or equals a listed impairment." *Id*.; 20 C.F.R. § 404.1520(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment," and "[a] boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). An ALJ need not, however, state why a claimant failed to satisfy every different section of the listing of impairments where the factual support for his conclusion can be deduced from the ALJ's prior discussion of the medical evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

The courts in this Circuit have applied *Marcia* and *Gonzalez* in various ways. *Compare Needham v. Berryhill*, No. 18-cv-04183-PJH, 2019 WL 5626641, at *18-19 (N.D. Cal. Oct. 31, 2019), *with Jessica B. v. Comm'r of Soc. Sec.*, No: 1:18-CV-3074-TOR, 2019 WL 850954, at *4-5

---

[1] Plaintiff does not challenge the ALJ's conclusion regarding the Paragraph B criteria.

9

(E.D. Wa. Jan. 30, 2019), *with Holguin v. Berryhill,* No.16-cv-06479-HRL, 2017 WL 3033672, at *4 (N.D. Cal. July 18, 2017), *with Dixon v. Astrue*, No. C–09–04869 JCS, 2010 WL 3766561, at *12-13 (N.D. Cal. Sept. 24, 2010). More specifically, in *Needham*, the Court considered whether a similar statement regarding the ALJ's Paragraph C analysis was sufficient for his listing determination. *Needham*, 2019 WL 5626641, at *18. The Court opined that while "the ALJ's reasoning concerning Paragraph B is appropriate for this court to assess when determining whether the ALJ adequately supported his conclusion that plaintiff did not satisfy Paragraph C . . . review of the ALJ's Paragraph C assessment is made difficult because the decision states all of Paragraph C's requirements in a single sentence, and simply concludes that plaintiff did not satisfy Paragraph C." *Id*. at *19. The Court concluded that "[t]he ALJ ha[d] not explained which requirement or requirements of Paragraph C were not met" and that "[w]ithout identifying the basis for his decision—which, if provided, this court could evaluate in light of earlier-assessed evidence—the ALJ has not made sufficient findings upon which a reviewing court may know the basis for the decision." *Id*. (citations and internal quotation marks omitted).

In contrast, the *Dixon* Court found that "the ALJ's discussion of Plaintiff's medical history is sufficient to show that he considered whether Plaintiff's impairments met or equaled a listed impairment." *Dixon*, 2010 WL 3766561, at *13. The Court noted that "the ALJ provided a detailed review of the medical evidence in the record, which . . . [was] an adequate statement of the foundations on which the ultimate factual conclusions are based." *Id.* (citing *Gonzalez*, 914 F.2d at 1201) (internal quotation marks omitted).

The Court recognizes that the issue at hand is a close one. While the ALJ's analysis of the Paragraph C criteria appears to be a nothing more than a boilerplate conclusion, the ALJ does provide almost two pages of analysis in his discussion of the Paragraph B criteria. AR 24-25. In his Paragraph B discussion, however, the ALJ relies on his analysis of Dr. Marinos' and Dr. Wermuth's opinions. This Court has concluded that the ALJ erred in his analysis of those opinions. *See* Section IV.A. Because the Court has decided to remand this matter for a re-evaluation of the medical evidence, the ALJ must also re-asses the listing criteria in light of the errors identified in Section IV.A.

**C. Issue Three: Evaluation of Plaintiff's Credibility**

Plaintiff's third challenge is to the ALJ's assessment of her credibility. The ALJ found that the claimant's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 26.

"Where, as here, the ALJ has found that the claimant has 'presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged' and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Anderson v. Saul*, 783 Fed. Appx. 697, 698 (9th Cir. 2019) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "Under the specific, clear and convincing standard, the ALJ must identify the testimony she found not credible and link that testimony to the particular parts of the record supporting her non-credibility determination." *Anderson*, 783 Fed. Appx. at 698 (quoting *Brown-Hunter*, 806 F.3d at 494) (internal quotation marks omitted).

It is evident from the ALJ's decision that his evaluation of Plaintiff's credibility is tied to his evaluation of the medical evidence, which the Court has concluded was erroneous. Under these circumstances, the ALJ must reassess Plaintiff's credibility based upon an appropriate evaluation of the medical evidence. *See Klee v. Berryhill*, No. 17-cv-00697-DMR, 2018 WL 3956337, at *17 (N.D. Cal. Aug. 17, 2018).

**D. Issue Four: Evaluation of Lay Witness Credibility**

Plaintiff argues that the ALJ erred in rejecting, without comment, the lay witness testimony of her husband and a Social Security representative. Dkt. 14 at 23. The Commissioner argues that any error was harmless. Dkt. 17 at 21.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Tobeler v. Colvin*, 749 F.3d 830, 832 (9th Cir. 2014).

11

(citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). "[L]ay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the competence of lay witnesses' to make." *Tobeler*, 749 F.3d at 833 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). But "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment." *Id*. (citations and internal quotation marks omitted).

Plaintiff's husband testified to Plaintiff's symptoms – namely, that Plaintiff is reclusive and increasingly forgetful. AR 63-65. The ALJ did not reference Plaintiff's husband's testimony in his opinion and consequently did not indicate what, if any, weight he assigned to the husband's opinion. Plaintiff's husband's testimony was competent evidence and could not be disregarded without comment. *Tobeler*, 749 F.3d at 833. Similarly, the ALJ did not mention Social Security Representative Ngo's comments that Plaintiff "had trouble concentrating" and that Representative Ngo had to repeat questions to Plaintiff. AR 173. The ALJ again erred in failing to expressly disregard such testimony without providing reasons for doing so.

The Commissioner argues that any error is harmless. Dkt. 17 at 21. "[A]n ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (citing *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)) (internal quotation marks omitted). In *Molina*, the Ninth Circuit examined whether the "ALJ's failure to discuss the testimony from [the plaintiff's] family members was inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina*, 674 F.3d 1104 at 1122 (internal citations and quotation marks omitted). The Court noted that though "the ALJ failed to explain her reasons for rejecting the lay witnesses' testimony. . . [t]hat testimony . . . did not describe any limitations beyond those [the plaintiff] herself described, which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons." *Id.* The Court concluded that "[b]ecause the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [the plaintiff's] testimony . . . the ALJ's failure to

12

give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination" and the error was deemed harmless. *Id*.

In Section IV.C, this Court determined that the ALJ improperly rejected Plaintiff's subjective testimony. Given that conclusion, it is unclear whether the ALJ's failure to give specific reasons for rejecting Plaintiff's husband's testimony or Social Security Ngo's observations ultimately altered the nondisability determination. The ALJ must correct this issue on remand.

**E. Issue Five: Not Allowing Dr. Wermuth To Testify by Telephone**

Plaintiff's final challenge is to the ALJ's refusal to allow Dr. Wermuth to testify by phone. Dkt. 14 at 11. On November 21, 2017, Plaintiff's counsel sent the ALJ a request to have Dr. Wermuth testify at the hearing. Dkt. 14 at 11 (citing AR 243). On November 27, 2017, the ALJ denied Plaintiff's request, stating that "[g]enerally, 20 CFR 404.936(c)(2)[2] grants claimants broad latitude to present in-person testimony of witnesses" but that "the availability of providing telephone testimony is generally subject to 20 CFR 404.936(c)(2)" and the ALJ found "no basis that would warrant the acceptance of telephone testimony." AR 247. The ALJ further stated that Dr. Wermuth could appear in-person at the hearing or that Plaintiff could have Dr. Wermuth make a written submission. *Id.* Plaintiff argues that the ALJ's refusal to allow Dr. Wermuth to testify by telephone constituted an abuse of discretion.

An ALJ commits an abuse of discretion when the ALJ's action "is erroneous and without any rational basis, or is clearly not justified under the particular circumstances of the case, such as where there has been an improper exercise, or a failure to exercise, administrative authority." SSR 13-1p. The Court does not find that the ALJ's decision to preclude Dr. Wermuth from testifying

---

[2] 20 C.F.R. § 404.936(c)(2) (2018) stated:

> The administrative law judge will direct a person, other than you or any other party to the hearing . . . to appear by video teleconferencing or telephone when the administrative law judge determines:
> (i) Video teleconferencing or telephone equipment is available;
> (ii) Use of video teleconferencing or telephone equipment would be more efficient than conducting an examination of a witness in person, and;
> (iii) The ALJ determines there is no other reason why video teleconferencing or telephone should not be used.

13

1 by telephone was erroneous where he invited the witness to testify live or, in the alternative, in
2 writing. That the ALJ rejected only telephonic testimony under the circumstances of this case was
3 not "without any rational basis" or "clearly not justified."

### V. DISPOSITION

The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877-78 (9th Cir. 2018) (citations omitted).

As discussed above, the ALJ failed to properly evaluate the medical evidence, which may have affected the ALJ's weighing of the medical evidence, his evaluation of Listing 12.04, his evaluation of Plaintiff's credibility, and his evaluation of the lay witness testimony. As a result, remand for further proceedings is warranted.

### VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** Defendant's cross-motion for summary judgment, and **REMANDS** this case for further proceedings.

**SO ORDERED.**

Dated: February 21, 2020

SUSAN VAN KEULEN
United States Magistrate Judge